JAMES B. SANFORD v. MARION R. PETTIT.

*Chattel mortgage—Assignment—Bona fide holder—Sale—Fraud—
Rescission—Principal and agent.*

The owner of a stock of goods mortgaged them to secure an indorser, and the mortgage was filed in the proper office, after which he sold the goods, and agreed with the purchaser to secure a release of the mortgage. The purchaser secured the payment of a portion of the purchase price by a mortgage on the goods, which was assigned with his consent, and placed on file. The vendor informed the first mortgagee of the sale, and that the vendee desired to give another mortgage running a year, and have the first one released; to which the first mortgagee consented, and executed the release, with the understanding that he was to have the same interest in the new mortgage as he held in the one he discharged. He received a receipt showing the filing of such a mortgage in the proper office, but as a matter of fact the vendor procured and filed an assignment to him of the second mortgage. The vendee, claiming to have been defrauded in the amount and value of the goods sold him, sought to rescind the sale, and attached the goods, which were replevied by the first mortgagee, and on the trial of the replevin suit the vendee claimed that the vendor and assignee of the second mortgage were agents of the first mortgagee, and that he, being properly chargeable with their knowledge of the alleged fraud, was not a *bona fide* holder of the second mortgage and note. In affirming a judgment in favor of the plaintiff it is held:

a—The mere fact that the mortgage was given to the vendor, and by him assigned, and assigned by his assignee to the

plaintiff at the request of the vendor, would not create such agency.

b—The court would have been justified in instructing the jury that there was no evidence in the case showing any such notice or knowledge on the part of the plaintiff of the alleged fraud as should put him upon inquiry as to the *bona fides* of the mortgage he was to take in place of the one he discharged, which was not due at the time, and in taking which the plaintiff could not be placed in any different position than that occupied by him under his first mortgage.

Error to Gratiot. (Daboll, J.) Argued November 19, 1890. Decided December 5, 1890.

Replevin. Defendant brings error Affirmed. The facts are stated in the opinion.

*Earle & Hyde,* for appellant, contended:

1. Bringing a suit in attachment to recover back consideration is sufficient evidence of a determination to rescind, and operates as a notice of rescission; citing *Graham v. Holloway,* 44 Ill. 385.

2. The only reason why the assignment of a mortgage becomes of greater validity in the hands of an innocent holder for value is that it secures a negotiable instrument, passing to the assignee of the mortgage by *indorsement* instead of by assignment; citing *Russell v. Waite,* Walk. Ch. 31; *Reeves v. Scully,* Id. 248; *Dutton v. Ives,* 5 Mich. 515; *Nichols v. Lee,* 10 Id. 526; *Redmond v. Stansbury,* 24 Id. 445; *Hull v. Swarthout,* 29 Id. 252, 253; *Robinson v. Wilkinson,* 38 Id. 301; *Judge v. Vogel,* Id. 569; *Matteson v. Morris,* 40 Id. 55; *Spinning v. Sullivan,* 48 Id. 5; *Minor v. Bewick,* 55 Id. 494.

3. The court erred in charging the jury that, if plaintiff had no knowledge or notice of the fraud, he was entitled to a verdict regardless of all other questions in the case, for the reason that this note did not impart negotiability to the mortgage, because it is expressly stated to be collateral thereto, and was assigned, instead of being indorsed, by Kneeland to plaintiff, who held it as indemnity for a pre-existing indorsement; citing *Boxheimer v. Gunn,* 24 Mich. 372; *Chadwick v. Broadwell,* 27 Id. 6; *Kohl v. Lynn,* 34 Id. 360; *Haescig v. Brown,* Id. 503.

4. Plaintiff did not release his mortgage upon the *credit* of the Wells mortgage, but upon Hughes' *promise* to procure a new mortgage from Wells, and this constitutes the difference

between a *bona fide* holder for value and one without greater rights than Hughes Bros. had; citing *Barnard v. Campbell,* 58 N. Y. 73, and cases cited.

*T. W. Whitney* and *McGarry & Ford,* for plaintiff, contended:

1. The rule is well settled in this State that where a mortgage is given, accompanied by a negotiable promissory note, and both are assigned before due to a *bona fide* holder, he will not be affected by any prior equities; citing *Reeves v. Scully,* Walk. Ch. 248; *Dunton v. Ives,* 5 Mich. 515.

2. The mortgage in this case was accompanied by such a note, which was properly negotiated before due to plaintiff for the release of his prior mortgage, which was a valuable consideration, and there is not a scintilla of evidence in the case showing knowledge by or notice to plaintiff of the alleged fraud in the sale of the goods to Wells, nor is there any fact or circumstance which as a matter of law would put a reasonable man upon inquiry in that regard; citing *Tupper v. Kilduff* 26 Mich. 396; *Borden v. Clark,* Id. 412; *Helmer v. Krolick,* 36 Id. 371.

3. Admitting the right of Wells to rescind, has he done so? The contract was voidable only, and must have been rescinded within a reasonable time; citing *Campau v. VanDyke,* 15 Mich. 371; and this is a question of law where the facts are undisputed; citing *Holbrook v. Burt,* 22 Pick. 546; *Kingsley v. Wallis,* 14 Me. 57; and the vendor must be placed *in statu quo;* citing *Wilbur v. Flood,* 16 Mich. 45; *Lumber Co. v. Bates,* 31 Id. 159; *Carroll v. Rice,* Walk. Ch. 373; and the contract of sale cannot be set aside after third persons, like the plaintiff, have acquired rights thereunder; citing *Wright v. Peet,* 36 Mich. 213; *Whiting v. Hill,* 23 Id. 399; *Pullman v. Alley,* 53 N. Y. 637; *Paddon v. Taylor,* 44 Id. 371; *Railway Co. v. Kerr,* 49 Ill. 458; *Manfg. Co. v. Sammons,* 49 Wis. 316.

LONG, J. This is an action of replevin for a stock of hardware.

Defendant, as deputy-sheriff of Gratiot county, held the goods under a circuit court attachment, issued at the instance of Christian Wells against Hughes Bros. The plaintiff claimed the right to the goods under a chattel mortgage. The plaintiff resides near Ionia, Mich., and is the father-in-law of Fred Hughes, one of the firm of

Hughes Bros. In 1888, the plaintiff indorsed several notes of the firm of Hughes Bros., at the First National Bank of Ionia, and, to secure himself against loss on such indorsements, took from Hughes Bros. a chattel mortgage upon their stock of goods at St. Louis, Mich. This mortgage was duly filed, and covered all their hardware in stock at that place.

Hughes Bros. met with several heavy losses in the spring of 1889. Among their creditors was Christian Wells, the real defendant in this suit. Wells called upon Hughes Bros., and in view of certain representations made by them as to the value of the stock, etc., which Wells claims were untrue, he was induced to purchase their stock and business. The indebtedness due to Wells at this time was $1,263. The stock was sold to him for $3,500, and in payment therefor he turned out the claim held by him, and gave back a chattel mortgage and his note to them for $2,237. A bill of sale was executed by Hughes Bros. to him. At the time this sale took place and the chattel mortgage was given, Wells was informed of the plaintiff's chattel mortgage, and refused to buy unless Hughes Bros. would procure its release, and they agreed to have this done. This arrangement was completed on February 15, 1889. Mr. Wells gave Fred Hughes a power of attorney to manage and carry on the business for him, and the business thereafter was carried on in the name of Wells.

On the day the mortgage was given to Hughes Bros., with the knowledge and consent of Wells, Hughes Bros. assigned it to Mr. Kneeland, a banker at St. Louis, and this assignment was duly filed. On February 25, 1889, and while the plaintiff's mortgage was on the property, Fred Hughes went to Ionia, and informed the plaintiff that they had sold the stock of goods; that the purchaser desired to have his mortgage discharged; and that he (the

purchaser) desired to give another mortgage in place of it, the plaintiff to retain the same interest in the new mortgage he had in the old one. To this arrangement the plaintiff assented, and, in accordance therewith, executed a release of his mortgage, with the understanding that he should have an assignment of the Hughes mortgage; and on March 5, 1889, an assignment was procured to him from Kneeland of the mortgage given him by Wells. This assignment was duly filed.

On June 19, 1889, Mr. Wells, claiming to have discovered for the first time that he had been defrauded by Hughes Bros. in the amount and value of the goods sold him, claimed to rescind the sale, and brought suit against them in attachment, and took possession under his writ of all the goods. On the trial the defendant claimed—

1. That the sale from Hughes Bros. to Wells was fraudulent.

2. That Wells properly rescinded the sale.

3. That plaintiff, being properly chargeable with the knowledge of Hughes Bros. and Kneeland, was not a *bona fide* holder.

It was claimed upon the part of the plaintiff—

1. That there was no fraud in the sale.

2. That, admitting there was fraud, yet Mr. Wells would be precluded from contesting the plaintiff's lien, because the plaintiff was an innocent holder.

3. That Wells never rescinded the sale.

4. That, Wells having purchased subject to plaintiff's lien, which was released at his request, and the note and mortgage given by him having been substituted in lieu thereof, he was estopped from contesting its validity.

The case was tried before a jury, and certain questions of fact submitted for their determination by the court. These questions are stated shortly by counsel for plaintiff as follows:

"1. Was the sale fraudulent?

"2. If so, was such sale seasonable rescinded?

"3. If so, was Sanford an innocent holder?

"4. Did Hughes or Kneeland act as Sanford's agent? If so, he was chargeable with their knowledge."

On these issues the plaintiff had verdict and judgment for six cents damages. Defendant brings error.

Twenty-five errors are assigned, but, as we view the case, none of them become important except the consideration of the question raised as to whether Sanford was a *bona fide* holder of the Wells mortgage. It is not claimed or pretended that the plaintiff was present during any of these negotiations, or that he had any knowledge that negotiations for a sale were going forward. He held a chattel mortgage on the whole stock, the validity of which is not questioned. It was a *bona fide* existing claim, and Mr. Wells was advised of it before he made the purchase. The first the plaintiff knew of the sale to Wells, so far as appears from this record, was on February 25, 1889, when Fred Hughes came to Ionia and informed him. His mortgage was then existing, and on file. The plaintiff testifies, and he is in no way contradicted, that Fred came to his place and told him he had sold his stock of goods, and the purchaser wanted to give another mortgage running a year, and wanted the old mortgage released; that he executed the release, and Hughes took it away, and was to have another mortgage made and sent to him in its place; that the arrangement was that the first mortgage was to be discharged, and a second one substituted for it; that he was to have no other or different interest in the second mortgage than he had in the first, and that was for what he was liable for at the bank as indorser for Hughes Bros. He afterwards got a receipt showing the filing in the town-clerk's office of such mortgage as Fred said had been given. It will be remembered that at this time the sale had been made to Wells, and the mortgage given back to Hughes Bros. by

him, and with his consent assigned to Kneeland. On March 5 following Fred's interview with plaintiff, this mortgage and the note were assigned to plaintiff by Kneeland.

The court charged the jury that—

"No matter how much fraud was practiced between Hughes and Wells, no matter even though Wells rescinded the sale, unless you go further and find knowledge upon the part of Sanford (the plaintiff here) under the rules I have laid down as to what would be knowledge or notice to him, still, notwithstanding that fraud, you will still find for the plaintiff in this case, because if he has acted in good faith and honestly, and without such notice as would put him upon inquiry, so that he could investigate and find out about the fraud, he is entitled to your verdict, just as much as though there had been no fraud committed."

The only claim made upon the trial or made here of the knowledge of Sanford of such fraud or notice of it is that Hughes and Kneeland were the agents of Sanford, and their knowledge was the knowledge of Sanford, and notice to them would be notice to Sanford. We are unable to find any testimony in this record, or any circumstance connected with the whole transaction, that could lead to the conclusion that Hughes or Kneeland was the agent of plaintiff. The mere fact that the mortgage was given first to Hughes and assigned to Kneeland, and by him assigned to plaintiff, at the request of Hughes, would not create such agency. Mr. Wells claims that Hughes agreed to get this Sanford mortgage released, and that that was one of the inducements that led him to make the purchase and give his mortgage. Sanford cannot be charged with the fraud of Hughes. It is not a case where one has stood by and knows of such arrangement, or who has assented to it, and then comes in and claims benefits under his mortgage.

Under the facts shown upon this record the court went

very far to protect the interests of Mr. Wells, and much further than the facts warranted. It would not have been error if the court had directed the jury that there was no evidence in the case to show that Sanford had any such knowledge or notice of the fraud, if any fraud was shown, as would have put him upon inquiry as to the *bona fides* of the mortgage he was to take in place of the one discharged by him; and that, under the circumstances shown, the knowledge of or notice to Hughes or Kneeland was not notice to the plaintiff. The mortgage and note taken were not yet due, and the plaintiff, in taking them, could not be placed in any different position than that occupied by him under his former mortgage, which was a valid lien, and of which Mr. Wells had knowledge at the time of his purchase.

The other questions become unimportant, and will not be discussed.

The judgment must be affirmed, with costs.

The other Justices concurred.